IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MELVIN JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 117-050 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Melvin Jackson appeals the decision of the Acting Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff applied for DIB and SSI on May 12, 2014, alleging a disability onset date of November 27, 2012. Tr. ("R."), pp. 270-71. Plaintiff was thirty-six years old on his alleged disability onset date and forty years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration. R. 39, 80. Plaintiff initially applied for benefits based on allegations of a back injury. R. 80, 89, 98. Plaintiff completed ninth grade, and prior to his

alleged disability, Plaintiff had accrued a relevant work history as a construction laborer, fast food cook, and dishwasher. R. 37, 295, 303-10.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 80-123, 125-147. Plaintiff requested a hearing before an ALJ, R. 165-66, and the ALJ held a hearing on August 9, 2016. R. 47-79. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Joel Greenberg, a Vocational Expert. Id. On October 26, 2016, the ALJ issued an unfavorable decision. R. 22-39.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 27, 2012, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments:  asthma, lumbar degenerative disc, obstructive sleep apnea, cervical degenerative disc disease, and major depressive disorder.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[1] except

---

[1]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. §§ 404.1567(b) & 416.967(b).

occasional ladders, ropes and scaffolds; occasional balance; occasional stooping; the individual would be limited to frequent all other posturals [sic]; would need to avoid concentrated exposure to hazards and pulmonary irritants; would be limited to one to two step tasks; off task approximately 5% of the day with low stress work defined as occasional changes and occasional decision making; would need to use a cane for prolonged ambulation and uneven terrain; would need to alternate positions at will and that would occur approximately every 30 minutes; the claimant would be able to stay on task while alternating positions. Thus, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including ampoule sealer, touch up screener, and final assembler (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from November 27, 2012, through October 26, 2016 (the date of the ALJ's decision) (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 26-38.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to

determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ improperly weighed Plaintiff's credibility regarding his subjective complaints in formulating Plaintiff's RFC because (1) the ALJ did not specify which

subjective allegations were contrary to which specific evidence; (2) the medical evidence supported Plaintiff's subjective limitations; and (2) the ALJ failed to explain how Plaintiff's minimal daily activities conflicted with his subjective limitations. See generally (Pl.'s Br., doc. no. 10; Pl.'s Rep., doc. no. 13). As explained below, the ALJ sufficiently stated the reasons she did not find Plaintiff's subjective complaints completely credible in formulating Plaintiff's RFC, and her credibility determination is supported by substantial evidence. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A.   Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).

Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining

whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy.  20 C.F.R §§ 404.1567, 416.967.  Here, the ALJ determined Plaintiff has the ability to perform light work.  "Light work" is defined as work that involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

In determining at step four in the sequential process whether Plaintiff's RFC for a sedentary work would allow him to perform past relevant work, the ALJ consulted the VE in accordance with 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2), which provide as follows:  "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." The VE identified Plaintiff's past work as a construction laborer as unskilled, very heavy work; Plaintiff's past work as a fast food worker as unskilled, light work; and Plaintiff's past work as a dishwasher as unskilled, medium work.  R. 69.  The VE further opined a hypothetical individual with the Plaintiff's age, education, past job experience, and physical limitations could not perform Plaintiff's past relevant work, but identified ampoule sealer, touch up screener, and final

assembler as other work the hypothetical individual could perform and that exist in the national economy.  R. 70-72.

**B.     The ALJ Properly Analyzed Plaintiff's Subjective Complaints.**

Plaintiff argues the ALJ erred in assessing his credibility as it relates to his subjective complaints when formulating his RFC.  See generally Pl.'s Br.; Pl.'s Rep.  The ALJ made the following determination regarding the credibility of Plaintiff's subjective complaints:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The allegations are inconsistent with the medical evidence of record and the claimant's activities of daily living.  The claimant prepares simple meals and folds cloths [sic].  The claimant watches television and listens to music (Exhibit 14F2).  The claimant does exercise 2 to 3 times a week.  Exercises include push-ups (Exhibit 7F5).  The claimant has two children (Exhibit 8F).  The claimant testified that he lives with his girlfriend (Hearing Testimony).
>
> The record reflects that in 2016, the claimant did not have an antalgic gait and walked without a limp on two occasions (Exhibit 22F20).
>
> The claimant has received minimal treatment for his mental impairments.
>
> In addition, the claimant has experienced other non-medical problems (Exhibit 15F34) which suggest that at least some of the claimant's difficulties may be situational, and not medical, in nature.

R. 37.

**1.     The Standard for Evaluating Subjective Complaints**

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  Under the Eleventh Circuit's standard, Plaintiff must show:  (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged

symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction.  Id.  When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).   Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability."  Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts."  Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2]  As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).   As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion that Plaintiff's medically determinable impairments could reasonably be

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

expected to cause the alleged symptoms, but his subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.

**2.    The ALJ Was Not Required to Specify Which Allegations Conflicted with Which Pieces of Medical Evidence.**

Plaintiff argues "[b]ecause the ALJ did not say that a specific allegation is contrary to specific evidence, the only way the Court can find the ALJ's conclusion to be supported by substantial evidence is if the Court selects the statement(s) to be weighed and the evidence to compare it against," which violates the principle set forth in SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Pl.'s Br., p. 6. Plaintiff's argument is contrary to Eleventh Circuit precedent.

An ALJ "must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer, 395 F.3d at 1210 (quoting Foote, 67 F.3d at 1651-62). However, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) (quoting Dyer, 395 F.3d at 1211); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits"). Indeed, the Eleventh Circuit does not require an explicit credibility finding as long as the ALJ's determination is more than "a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." Dyer, 395 F.3d at 1210-11 (internal quotations omitted).

Here, the ALJ made an explicit credibility finding not only by referencing the copious medical evidence discussed in his RFC evaluation but also specifically pointing to several

specific pieces of evidence to contradict the Plaintiff's subjective complaints.  R. 37.  That she did not perform a one-to-one comparison of Plaintiff's allegations to contradictory evidence does not undermine her credibility determination.  <u>Lewen</u>, 605 F. App'x at 968; <u>Dyer</u>, 395 F.3d at 1210-11; <u>Cooper</u>, 521 F. App'x at 808-09.

### 3.     The ALJ Credibility Determination Regarding Plaintiff's Back Pain and Mental Limitations Is Supported by Substantial Evidence.

Plaintiff also argues the medical evidence supports Plaintiff's subjective complaints regarding his back pain and mental limitations, stating in part "[n]one of the medical records provide a basis for the ALJ to reject any of [Plaintiff]'s limitations . . . ."  Pl.'s Br., pp. 5-12; Pl.'s Rep., pp. 1-5.  Contrary to Plaintiff's argument, the ALJ rejection of Plaintiff's subjective limitations was supported by substantial evidence.

Plaintiff began experiencing back pain after falling into a three-foot hole in November 2012.  R. 460.  This back injury eventually required two surgeries in March and May 2013 respectively.  R. 506-07, 524-25.  Prior to and after these surgeries, Plaintiff attended physical therapy for his back pain in February and April 2013, and for twelve weeks following his May 2013 surgery.  R. 649, 651-52, 654, 663.

As the ALJ discussed, imaging results post-surgery through February 2016 showed only mild degenerative changes and only mild or moderate stenosis in Plaintiff's cervical and lumbar spine.  R. 30-31.  Lumbar spine MRIs in July 2013 and December 2014 showed only mild degenerative changes and generally normal disc space heights and joints, and January 2015 lumbar and cervical spine MRIs showed generally mild degenerative changes and post-surgical changes consistent with fusion.  R. 636, 824, 875-77, 880.  A February 2016 lumbar spine CT scan reflected surgical hardware and moderate stenosis due to a mild disc bulge at one level and only mild stenosis at another level.  R. 1032-35, 1054-55.  Plaintiff claims these objective

findings are insufficient to support the ALJ's rejection of Plaintiff's pain allegations because they merely show a lack of objective support for Plaintiff's back pain allegation.  Pl.'s Rep., p. 2. "[An] ALJ cannot discredit [a claimant]'s testimony as to the intensity or persistence of her pain and fatigue *solely* based on the lack of objective medical evidence."  Snyder v. Comm'r of Soc. Sec., 330 F. App'x 843, 848 (11th Cir. 2009) (emphasis added) (citations omitted).  As discussed below, the ALJ noted ample other medical evidence contradicting Plaintiff's complaints of back pain.

Plaintiff had multiple visits to the hospital between April 2014 and May 2015.  However, only one visit showed some decreased lumbar range of motion and positive straight leg raising, while the other visits yielded normal back tests.  R. 736-37, 744-45, 853, 856-57, 866, 882-83. Moreover, while Plaintiff complained of back pain, spinal tenderness, and limited lumbar range motion in visits to Faithcare Free Clinic in July 2014 through September 2014, he also exhibited negative Romberg Test, negative Pronator Drift, and good lower and upper extremity strength and reflexes.  R. 789.  Indeed, during a September 16, 2014 visit, Plaintiff's doctor noted, "Pain is not much of a problem."  R. 792.

While being treated by Solano County Justice Center from August 2015 to January 2016, Plaintiff complained about back pain and exhibited some reduced range of motion in his back, but also exhibited normal gait and balance, normal muscle tone and strength, and normal extremity findings.  R. 913, 915, 918, 922, 924.  From January 2015 through April 2016, La Clinica visits revealed some back tenderness.  R. 801-02, 804-05, 808-09, 811, 816, 102627, 1030-31, 1038-39.  Plaintiff had antalgic gait and positive straight leg raising during an April 2016 visit to Bay Area Orthopedic Surgery and Sports Medicine, but exhibited full 5/5 strength in most extremities except for 3/5 strength in some knee, toe, and foot movements.  R. 31, 37,

1042-43, 1046-47.

The ALJ further discussed the findings in two consultative physical exams with Dr. Reginald Brown conducted in January and September 2014, which reflected full range of motion and almost perfect strength. R. 35, 728-34, 779-84. Dr. Brown indicated Plaintiff's January 2014 exam was consistent with his surgical history but otherwise showed no significant findings. R. 35, 729-33. Both exams showed Plaintiff's use of a cane for gait testing, but normal neck findings, normal gait, full 5/5 motor function everywhere except the lower extremities, which had 4/5 motor testing, reduced back range of motion, and full range of motion everywhere else. R. 729-33, 780-84.

Plaintiff points to his surgeon's recommendation that he not return to work in the six to twelve months following his May 2013 surgery in support of his credibility argument. Pl.'s Br., p. 8. Yet this recommendation was based on Plaintiff's work with NPL Construction. R. 646, 649. Regardless of this specific opinion, Plaintiff's surgeon indicated Plaintiff could still lift thirty-five pounds maximum with frequent lifting up to fifteen pounds, which is consistent with ALJ's RFC findings. R. 29, 644, 646, 649.

Plaintiff additionally argues his medical records show he used a cane at times and sometimes had reduced lumbar and knee range of motion, and therefore the ALJ erred in using his normal gait on a few occasions to undermine the credibility of his allegations. Pl.'s Br. at 8-11, 14-16. As reflected in the medical evidence detailed above and in the ALJ's decision, the ALJ thoroughly considered the exam findings of record, acknowledging Plaintiff's physical exams at times show he used a cane and had reduced back and lower extremity range of motion. R. 31, 35. Indeed, the ALJ incorporated Plaintiff's need for a cane into his RFC. R. 29. However, Plaintiff's medical records from 2014 through April 2016 generally showed

unremarkable extremity, musculoskeletal, and neurological findings, as well as normal motor strength, and he was treated conservatively.  R. 31, 35, 737, 745, 801-02, 804-05, 808-09, 811, 816, 857, 866, 883, 913, 915, 918, 922, 924, 1026-27, 1030-31, 1038-39.  Such records undermined Plaintiff's allegations of severely limiting back pain, regardless of his need for a cane or his gait.

Plaintiff further argues his allegations regarding his mental limitations are supported by the psychological evaluation of Dr. Theodore Daniel.  Pl.'s Br., p. 11-12.  However, as the ALJ observed, Plaintiff's October 2014 examination with Dr. Daniel showed generally unremarkable mental status findings.  R. 34-35, 793-96.  Dr. Daniel found Plaintiff had fair eye contact, logical and coherent thought processes, good concentration, and good immediate memory testing.  R. 794.  Dr. Daniel assessed Plaintiff with a full-scale IQ score of 74 and a global assessment of functioning score of 58, which are indicative of moderate symptoms R. 34-35, 795-96.  Dr. Daniel opined Plaintiff had borderline intellectual functioning, could remember, understand, and carry out simple instructions, and would have mild to moderate difficulties coping with work stressors and sustaining attention and concentration when following work routines and completing production tasks.  R. 35, 796.  The ALJ gave Dr. Daniel's evaluation substantial weight, and accordingly limited Plaintiff to one- to two-step tasks, jobs permitting him to be off task five percent of the day, and low-stress work involving no more than occasional changes and decision-making.  R. 29, 35.  Plaintiff fails to demonstrate how Dr. Daniel's evaluation, which the ALJ expressly considered and gave substantial weight in her decision, warrant any greater limitations than already given regarding his mental symptoms.

In sum, the ALJ's determination is consistent with the medical evidence supporting a RFC to perform a range of light work with additional walking and postural restrictions, and the

medical evidence does not support Plaintiff's allegations of disabling limitations due to back pain or mental limitations.  R. 37.

    **4.**    **The ALJ's Determination that Plaintiff's Subjective Complaints Are Inconsistent with His Daily Activities Is Supported by Substantial Evidence.**

Finally, Plaintiff argues the ALJ did not properly explain how Plaintiff's daily activities, such as preparing simple meals, folding clothing, exercising two to three times per week, watching television, and listening to jazz and gospel music, conflicts with his subjective allegations.  Pl.'s Br., pp. 12-14; Pl.'s Rep., pp. 5-6.  Plaintiff correctly cites Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), for the proposition that participation in everyday activities of short duration does not alone disqualify a claimant from disability.  Pl.'s Br. at 12-13.  Here, however, Plaintiff participated in more than everyday activities.  In July 2013, Plaintiff told his surgeon he exercised three times a week, including pushups, and in October 2014, Plaintiff reported to Dr. Daniels that he exercises on a typical day.  R. 647, 794.  Such regular and vigorous exercise goes beyond "everyday activities."  Plaintiff cannot escape his own reports by claiming ALJ's "assertion of vigorous exercise was simply not possible."  Pl.'s Br., p. 13.

Moreover, the ALJ did not rely solely on Plaintiff's daily activities in assessing his subjective complaints or concluding he was not disabled.  She also considered post-surgery medical evidence showing generally unremarkable physical and mental status findings as well as conservative treatment consistent with an ability to perform a range of light work.  R. 37.  Thus, consistent with Lewis, the ALJ considered Plaintiff's daily activities along with the other record evidence in assessing his complaints and RFC.  R. 30-37.

Although Plaintiff may disagree with the conclusion reached by the ALJ, the credibility determination is supported by substantial evidence.

## IV.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 18th day of April, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA